■     In the Matter of 113 HILLSIDE AVENUE 'CORP., Respondent, v. LAWRENCE F. ZAINO et al., Constituting the Board of Appeals of the Incorporated Village of Westbury, Appellants.— In a proceeding pursuant to article 78 of the CPLR, the Board of Appeals of the Incorporated Village of Westbury appeals from a judgment of the Supreme Court, Nassau County, entered February 18, 1969, which (1) annulled the board's determination denying petitioner's application for an area variance and (2) directed that the variance be granted. Judgment affirmed, without costs. Petitioner's application for an area variance was denied by the board on the ground that the granting thereof would be detrimental to the "public health, safety and welfare". In our opinion, that conclusion is not supported by substantial evidence; hence, the Board's determination cannot stand. The board found that "the dimensions of the plot are not normal for this area thereby affecting the light and air", despite the facts that the total area of the plot is more than double the minimum required, that the interior  of the plot, which is rectangular in shape, is more than sufficient to meet the side yard and area requirements, and that upon cross-examination the Village's own expert, Mr. Rose, conceded that the plot was of sufficient dimensions to provide adequate air and light. The finding that "access of * * * fire * * * and garbage trucks would be difficult and impaired " is not supported by substantial evidence to show that the proposed driveway is inadequate for access by such equipment (cf. *Matter of Mastromonaco* v. *Bartels*, 16 A D 2d 676); nor is the need for *entrance* by such equipment for 'fire protection or garbage collection shown. Although the board found that the plot is too close to the county sump, there was no showing that drainage problems will result or that the proposed residence

cannot be provided with an adequate cesspool. Finally, in view of the total area of the plot, the size and nature of the proposed residence and the absence of substantial proof that property values would be impaired, the board's finding that the granting of the variance would alter the essential character of the area is unsupportable. While it is true that the necessity for a variance herein arises from subdivision by petitioner's predecessor in interest, it is to be noted that at the time of petitioner's acquisition of the subject plot there was outstanding a building permit to erect a residence thereon (see *113 Hillside Ave. Corp.* v. *Village of Westbury,* 27 A D 2d 858). Christ, Martuscello and Kleinfeld, JJ., concur; Beldock, P. J., and Munder, J., dissent and vote to reverse the judgment, dismiss the proceeding and confirm appellants' determination, with the following memorandum: Petitioner, a domestic corporation, is the owner of a vacant parcel of land located in a Residential " A " zone in the Village of Westbury. The minimum area requirement for parcels in that zone is 7,500 square feet, the minimum front yard depth is 30 feet and the minimum width and street frontage is 75 feet. The parcel is an irregular " pot handle " shaped plot with an area of approximately 13,600 square feet (almost twice the required minimum area), but with street frontage of only 25 feet. The " pot handle " shape comes from the fact that the parcel is landlocked except for a portion 75 feet by 25 feet (resembling a pot handle) with 25 feet of one of the 75-foot sides fronting on and providing access to the street. This was not always so. The parcel was formerly part of a larger parcel acquired by a brother of one of the two principal owners of the corporate petitioner in 1965. This brother subdivided the larger parcel into three lots and contracted to sell the subject parcel and a contiguous lot to petitioner's principals. They in turn assigned the contract to petitioner and title was conveyed to it. This contiguous lot, which satisfied both area and frontage requirements and was improved with an existing residence was then sold by petitioner to a third party. A third party also purchased the remaining lot from the grantor-brother. This lot similarly abuts on a portion of the subject parcel, meets area and frontage requirements and is improved with a residence. When this matter was previously before us (*Matter of 113 Hillside Ave. Corp.* v. *Zaino,* 30 A D 2d 559) we remitted it for a new hearing in accordance with the principles of law enunciated in *Matter of Fulling* v. *Palumbo* (21 N Y 2d 30). (For other litigation involving these parties, see *113 Hillside Ave. Corp.* v. *Village of Westbury,* 27 A D 2d 858.) The Special Term determination which we then reviewed was made before the *Fulling* case was decided and, like the Special Term determination now under review, annulled the board's denial of petitioner's application for an area variance. This new hearing has been held and, in our opinion, the evidence offered thereat supports the board's action. This evidence shows a radically different factual setting from the one in *Fulling.* Here, all the lots in the immediately surrounding area satisfy the zoning requirements. There are no lots even remotely resembling petitioner's parcel with its above-described " pot handle " and its street frontage of only one-third the required amount. Hence, the Board had a legitimate interest or purpose in restricting the use of petitioner's property and that was to maintain and preserve the essential character of the area. This interest was specifically recognized in the *Fulling* case (*supra,* p. 34). Here, petitioner purchased its two lots simultaneously from someone who personally had created the substandard condition. In other words, this was not a situation, as in *Fulling,* where the substandard condition was created by rezoning subsequent to acquisition. In this regard, we view the instant case as being controlled by the decision in *Matter of Weinstein* v. *Planning Bd. of Vil. of Great Neck* (28 A D 2d 862, affd. 21 N Y 2d 1001). There, this court affirmed a judgment dismissing a petition which sought to annul a determination by the respondent Planning Board disapproving

a subdivision map submitted by the petitioner. One of the grounds for disapproval was that one of the lots created by the proposed subdivision failed to satisfy the street frontage requirement for residences in the area. On appeal to the Court of Appeals from our decision the petitioner argued that the Planning Board's disapproval of the subdivision map and refusal to grant a requested variance was arbitrary and capricious. The Court of Appeals unanimously affirmed the order of this court, without opinion, and did so more than four months *after* its decision in *Fulling* (*supra*). Finally, here there was evidence that the peculiar layout of the parcel made it inaccessible to emergency and sanitation equipment and that its location next to a county sump would have an adverse effect on the health of the community because of the possibility of leakage from a cesspool. The only controverting evidence was supplied by the petitioner's principals, whose testimony consisted largely of conclusory, self-serving declarations. The board members heard and saw the witnesses, were familiar with the parcel and the surrounding area and concluded that the granting of petitioner's application would be detrimental to the " public health, safety and welfare ". In our opinion, this was demonstrated by the record and for this reason and those set out above we vote to sustain the board.